# Exhibit A

E-SERVED Prince George's Circuit Court 2/6/2025 1:08 PM System SystemEnvelope: 19862400



## CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

14735 Main Street, Upper Marlboro, Maryland, 20772

E-FILED; Prince George's Circuit Court
Docket: 2/6/2025 1:08 PM; Submission: 2/6/2025 1:08 PM
Calendar Management: 301-952-3850
Envelope: 19862400

**To:** PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
SERVE ON: MILLARD HOUSE II, CHIEF EXECUTIVE
OFFICER
SASSCER ADMINISTRATION BUILDING
14201 SCHOOL LANE
UPPER MARLBORO, MD 20772

| | |
|---|---|
| **Case Number:** | C-16-CV-25-000485 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**MAKIA STAVES, ET AL. VS. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, ET AL.**

Issue Date: 1/31/2025

### WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

MAKIA STAVES
9510 Silver Fox Turn
Clinton, MD 20735

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin El Amin #845
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

Makia Staves, et al. vs. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, et al.Case Number: C-16-CV-25-0004

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Prince George's County**

Makia Staves, et al. vs. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, et al. Case Number: C-16-CV-25-000

## SHERIFF'S RETURN
### (please print)

To:  PRINCE GEORGE S COUNTY PUBLIC SCHOOLS

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                    Location of service

_____ by _____ with the following:
Manner of service

☐ Summons                         ☐ Counter-Complaint
☐ Complaint      _____    ☐ Domestic Case Information Report
☐ Motions                         ☐ Financial Statement
☐ Petition and Show Cause Order       ☐ Interrogatories
☐ Other _____
Please specify

(2) Was unable to serve because:
☐ Moved left no forwarding address    ☐ No such address
☐ Address not in jurisdiction         ☐ Other _____
Please specify

Sheriff fee: $ _____    ☐ waived by _____

_____    _____
Date                    Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**IN THE CIRCUIT COURT OF MARYLAND
FOR PRINCE GEORGE'S COUNTY
Civil Division**

| | |
|---|---|
| **MAKIA STAVES**<br>9510 Silver Fox Turn<br>Clinton, MD 20735<br><br>**LINDA HENSON-HUBB**<br>11006 Rhodenda Place<br>Upper Marlboro, MD 20772<br><br>**DEMARIO NEWMAN**<br>10814 Flying Change Ct<br>Upper Marlboro, MD 20772<br><br>**JULIUS PINKNEY**<br>604 Pasture Pl,<br>Prince Frederick, MD 20678<br><br>**TONYA MANAGO**<br>9054 Trumps Hill Road<br>Upper Marlboro, MD 20772<br><br>**AYANA BALL WARD**<br>1105 Kings Tree dr.<br>Mithchellville, MD 20721<br><br>**CARLYLE ROSE**<br>8302 Triple Crown Rd<br>Bowie, MD 20715<br><br>　　　　Plaintiffs,<br><br>v.<br><br>**PRINCE GEORGE'S COUNTY<br>BOARD OF EDUCATION**<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County<br><br>**SERVE ON:**<br><br>**BRANNDON D. JACKSON, Chair** | Case No.: _____ |

| | |
|---|---|
| Prince George's County Board of Education<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>PRINCE GEORGE'S COUNTY<br>PUBLIC SCHOOLS<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County<br><br>**SERVE ON:**<br><br>MILLARD HOUSE II<br>Chief Executive Officer<br>Prince George's County Public Schools<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>      Defendants. | |

## COMPLAINT
## WAGE THEFT

Makia Staves, Linda Henson-Hubb, Demario Newman, Julius Pinkney, Tonya Manago, Ayana Ball-Ward, and Carlyle Rose ("Plaintiffs"), through their attorneys, bring this lawsuit against the Defendants, Prince George's County Board of Education and the Prince George's County Public Schools for unpaid wages under the Maryland Wage Payment & Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL") and the common law, stating as follows:

## NATURE OF THE CASE

1.     Plaintiffs, Certified Athletic Directors for the Prince Georges County Public Schools who, because of a PGCPS teacher shortage during the 2022 – 2023 school year, worked as classroom teachers in addition to their full time jobs as Athletic Directors. Beginning in

2

August of 2022, Plaintiffs were informed several times, orally and in writing, that they would be paid their regular rate of pay for their duties as 'Teacher of Record' in the classroom. Abruptly, in March of 2023, months after Plaintiffs had already started working as Teachers of Record to assist their school district, Defendant House issued a letter to the Plaintiffs informing them that they would only receive substitute teacher pay for their extra duties, roughly half their actual pay.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this case because Plaintiff seeks more than $30,000 in damages.

3.      This Court has personal jurisdiction over the Defendants pursuant to Md. Code, Cts. And Jud. Proc. §§ 1-501, 6-102 because Defendants' principal place of business is located in Prince George's County, Maryland.

4.      Venue is proper pursuant to Md. Code, Cts. And Jud. Proc. §6-201 because Defendants' principal place of business is located in Prince George's County, Maryland.

## PARTIES

5.      Plaintiff Staves is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

6.      Plaintiff Henson-Hubb is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County

government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

7.      Plaintiff Newman is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

8.      Plaintiff Pinkney is a resident of Calvert County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

9.      Plaintiff Manago is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Business Educator, Athletic Coach and/or Teacher of Record.

10.     Plaintiff Ball-Ward is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

11.     Plaintiff Rose is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

12.     Plaintiffs, at all relevant times, were Defendants' "employees" within the meaning of Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL").

13.     Defendant PGCPS is a public-school district in the State of Maryland, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

14.     Defendant Prince George's County Board of Education is the official policymaking and oversight body for Defendant PGCPS, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

15.     Defendant House is and was the Chief Executive Officer for Prince George's County Public Schools at all times relevant to the complaint. His offices are located at 14201 School Lane, Upper Marlboro, MD 20772.

16.     Defendant Alsobrooks, County Executive for Prince Georges County, together with the Prince George's County Council collectively constitute the government of Prince George's County, Maryland. At all times relevant to the complaint, the Prince George's County Government was Plaintiff's employer.

17.     All Defendants are "employer[s]" within the meaning of Md. Code Ann., Lab. & Empl. §§ 3-501 et seq.

## FACTS

18.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as fully set forth herein.

19.     Prior to July 1, 2022, PGCPS athletic directors served as athletic directors 50% of the time and served as classroom teachers 50% of the time. Athletic directors were paid an additional 10% of their salary to act in this dual role.

5

20.     Effective July 1, 2022, PGCPS changed the athletic director position to full time, 10-month positions. This modification removed the requirement that athletic directors teach classes and also removed the additional 10% compensation since they would no longer serve as classroom teachers of record.

21.     In August of 2022, Dr. Carletta Marrow, PGCPS Associate Superintendent held a meeting with PGCPS athletic directors the via Zoom, which the Plaintiffs attended. Shirly Diggs, the PGCPS Coordinating Supervisor of Interscholastic Athletics and George McClure, PGCPS Supervisor of Interscholastic Athletics were also in attendance at the meeting.

22.     During the August, 2022, Zoom meeting, Dr. Marrow stated, unequivocally, that athletic directors who "fill in" or "sub" for an absent teacher would be paid the substitute teacher rate of approximately $30/hour.

23.     On the other hand, athletic directors who are assigned classes as "Teachers of Record" would be paid their Per Diem rate for the additional time spent in the classroom above and beyond their full-time athletic director duties.

24.     Upon the start of the school year, each of the Plaintiffs were assigned as classroom teachers of record, requiring them to teach classes during the day in addition to their full-time athletic director duties.

25.     The Plaintiffs' supervisors and school principals assigned the Plaintiffs to teach classes because of a shortage of teachers available to teach.

26.     The Plaintiffs did not act as substitute teachers when teaching classes during the 2022-2023 school year; on the contrary, the Plaintiffs were the assigned teachers for the classes they taught.

27.     As teachers of record, the Plaintiffs were required to complete the following duties in addition to their duties as full-time athletic directors:

- Attend parent-teacher conferences;
- Attend back-to-school nights;
- Provide a syllabus for the subject(s) they taught;
- Attend department meetings;
- Input Progress Report/Report Card Grades;
- Submit Grade Change Forms when applicable;
- Lesson Planning;
- Attend IEP/504 meetings;
- Overall classroom Management;
- In initiate disciplinary actions (Write-ups/Cut slips etc.);
- Respond to Parent and Staff emails regarding students in classes;
- Grade Assignments and Assessments

28.     Substitute teachers are not required to complete any of these duties since they are not teachers of record.

29.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

30.     This limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

31.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

32.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this assurance to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

7

33.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

34.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute rate of $30/hour for the additional duties they had been performing for the prior seven months.

35.     Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

36.     During the 2022-2023 school year, Ms. Staves worked 70 hours with a per diem rate of pay of $70 for total expected wages of $4,900. Ms. Staves also worked 539 hours with a per diem rate of pay of $64.40 for total expected wages of $34,711.60. Ms. Staves has not received wages at all for her work as the teacher of record for the 2022-2023 school year.

37.     During the 2022-2023 school year, Ms. Henson-Hubb worked 478 hours with a per diem rate of pay of $73.67 for total expected wages of $35,166.46. Defendants paid Ms. Henson-Hubb $14,340 in wages, $20,826.46 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

38.     During the 2022-2023 school year, Mr. Pinkney worked 470 hours with a per diem rate of pay of $71.10 for total expected wages of $33,417.00. Defendants paid Mr. Pinkney $18,060 in wages, $15,357.00 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

39.    During the 2022-2023 school year, Mr. Rose worked 176 hours with a per diem rate of pay of $71.10 for total expected wages of $12,513.60. Defendants paid Mr. Rose $2,790.00 in wages, $9,723.60 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

40.    During the 2022-2023 school year, Mr. Newman worked 510 hours with a per diem rate of pay of $71.10278 for total expected wages of $36,262.42. Defendants paid Mr. Newman $15,300.00 in wages, $20,962.42 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

41.    During the 2022-2023 school year, Ms. Manago worked 324 hours with a per diem rate of pay of $71.10 for total expected wages of $23,036.40. Defendants paid Ms. Manago $9,720.00 in wages, $13,316.40 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

42.    During the 2022-2023 school year, Ms. Ball-Ward worked 608 hours with a per diem rate of pay of $55.05 for total expected wages of $33,470.40. Defendants paid Ms. Ball-Ward $18,240 in wages, $15,230.40 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

43.    On November 8, 2023, Plaintiffs sent a letter to the CEO of PGCPS informing the Defendants of their failure to pay the Plaintiffs as promised for the work performed as teachers of record above and beyond their full time duties as athletic directors.

44.    The letter to the Defendants included the amount PGCPS promised to pay Plaintiffs, the amount Plaintiffs were paid, and the amount due according to PGCPS' written promises to pay Plaintiffs their per diem rate.

45.    On November 20, 2023, Plaintiffs received a letter from the PGCPS Employee and Labor Relations Office indicating that PGCPS denied failing to pay the Plaintiffs' wages, despite having information that Dr. Marrow and other administration officials promised the Plaintiffs that they would be paid their per diem hourly rate for performing work duties above and beyond their full time positions and well beyond that which is expected of a substitute teacher.

**COUNT I**
**Violation of the Maryland Wage Payment & Collection Law**
**Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL")**
**(Against All Defendants)**

46.    Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

47.    During the 2022-2023 school year and at all times thereafter, Defendants have refused to pay the Plaintiffs' promised wages due, in violation of the MWPCL, Md. Code Ann., Labor & Empl. §§ 3-501 et seq.

48.    After repeatedly promising to pay Plaintiffs their wages at their respective per diem rate, Defendants have not paid the Plaintiffs all of their owed wages.

49.    Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-502, Defendants were obligated to pay Plaintiffs for all wages earned on a regular basis, including all minimum wages and overtime wages.

50.    Defendants' actions in failing to pay Plaintiffs all wages owed for all hours worked were willful violations of the MWPCL.

51.    Over two weeks have elapsed from the date on which the Defendants were required to have paid the Plaintiffs all owed wages as required by the MWPCL, Md. Code Ann., Labor & Empl. § 3- 507.2(a).

10

52.     On November 8, 2023, Plaintiffs sent a detailed letter to the CEO of PGCPS informing the Defendants of their failure to pay the Plaintiffs, including the amounts owed to each of the Plaintiffs.

53.     There is no bona fide dispute as to the wages owed to the Plaintiffs.

**WHEREFORE,** Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) Plaintiffs be awarded treble damages; (c) that Plaintiffs be awarded pre- and post- judgment interest; (d) Plaintiffs be awarded their attorney's fees and costs; and (e) the Court grant such further relief as the nature of this cause shall require.

## COUNT II
## UNJUST ENRICHMENT
### (Against All Defendants)

54.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

55.     Plaintiffs and Defendants entered into an oral contract whereby Plaintiffs agreed to perform additional duties as classroom teachers of record, in addition to their full time duties as athletic directors for PGCPS, and the Defendants agreed to pay the Plaintiffs their "Per Diem" hourly rate for performing those additional duties.

56.     The oral contract entered into by the Plaintiffs and the Defendants was memorialized and reinforced in writing by Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS.

57.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

58.     These duties were in addition to their regular, full-time duties as athletic directors.

11

59.     These additional duties limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

60.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

61.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this written promise to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

62.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

63.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute teacher rate of $30/hour for the additional duties they had been performing for the prior seven months.

64.     Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

65.     Plaintiffs provided valuable benefits to the Defendants when they agreed to take on additional duties as classroom teachers of record at their per diem hourly rate.

12

66.     Defendants were aware of the benefits conferred upon them by the Plaintiffs since the Defendants asked the Plaintiffs to take on additional duties as classroom teachers and promising to pay Plaintiffs their per diem hourly rate for the additional duties they performed.

67.     Defendants accepted the benefits of the bargain they struck when the Plaintiffs performed additional duties as classroom teachers, as agreed.

68.     Defendants failed to pay for the additional duties performed by the Plaintiffs as promised.

69.     Equity, fairness, and the interests of justice require that Defendants pay Plaintiffs as a result of the substantial benefits conferred upon Defendants in the form of Plaintiffs' performance of additional duties above and beyond their full time duties as Athletic Directors.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

### COUNT III
### BREACH OF CONTRACT
### (Against All Defendants)

70.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

71.     Plaintiffs and Defendants entered into an oral contract whereby Plaintiffs agreed to perform additional duties as classroom teachers of record, in addition to their full time duties as athletic directors for PGCPS, and the Defendants agreed to pay the Plaintiffs their "Per Diem" hourly rate for performing those additional duties.

13

72.     The oral contract entered into by the Plaintiffs and the Defendants was memorialized and reinforced in writing by Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS.

73.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

74.     These duties were in addition to their regular, full-time duties as athletic directors.

75.     These additional duties limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

76.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

77.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this written promise to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

78.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

79.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute teacher rate of $30/hour for the additional duties they had been performing for the prior seven months.

14

80.      Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

81.      Plaintiffs provided valuable benefits to the Defendants when they agreed to take on additional duties as classroom teachers of record at their per diem hourly rate.

82.      Defendants were aware of the benefits conferred upon them by the Plaintiffs since the Defendants asked the Plaintiffs to take on additional duties as classroom teachers and promising to pay Plaintiffs their per diem hourly rate for the additional duties they performed.

83.      Defendants accepted the benefits of the bargain they struck when the Plaintiffs performed additional duties as classroom teachers, as agreed.

84.      Defendants failed to pay for the additional duties performed by the Plaintiffs as promised.

85.      WHEREFORE, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

## <u>JURY TRIAL PRAYER</u>

Plaintiff hereby demands a trial by jury on all such eligible claims.

Dated: January 28, 2025                              Respectfully Submitted,

*/s/ Darrell Chambers*
Darrell Chambers [980872]
Douglas S. Rosenbloom [1016235]
CHAMBERS & ROSENBLOOM LLP
4800 Hampden Lane Suite 200
Bethesda, MD 20814
Tel: (301) 500-1575
darrell@chambersrosenbloom.com
doug@chambersrosenbloom.com

*Counsel for Plaintiffs*

16



**CIRCUIT COURT FOR PRINCE GEORGES COUNTY, MARYLAND**
14735 Main Street, Upper Marlboro, Maryland, 20772

**To:**  PRINCE GEORGE S COUNTY BOARD OF EDUCATION
SERVE ON: BRANNDON D. JACKSON, CHAIR
SASSCER ADMINISTRATION BUILDING
14201 SCHOOL LANE
UPPER MALBORO, MD 20772

|  |  |
|---|---|
| **Case Number:** | C-16-CV-25-000485 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**MAKIA STAVES, ET AL. VS. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, ET AL.**

Issue Date: 1/31/2025

### WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

MAKIA STAVES
9510 Silver Fox Turn
Clinton, MD 20735

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin El Amin #845
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Prince George's County

Makia Staves, et al. vs. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, et al.Case Number: C-16-CV-25-0004

## SHERIFF'S RETURN
### (please print)

To: PRINCE GEORGE S COUNTY BOARD OF EDUCATION

_____ ID# _____ of the _____
          Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                                      Name of person served

on _____ at _____
          Date of service                                        Location of service

_____ by _____ with the following:
                                                      Manner of service

        ☐ Summons                                          ☐ Counter-Complaint

        ☐ Complaint                                        ☐ Domestic Case Information Report

        ☐ Motions                                          ☐ Financial Statement

        ☐ Petition and Show Cause Order                    ☐ Interrogatories

        ☐ Other
                                  Please specify

    (2) Was unable to serve because:

        ☐ Moved left no forwarding address          ☐ No such address

        ☐ Address not in jurisdiction               ☐ Other
                                                                    Please specify

Sheriff fee: $ _____ ☐ waived by _____

_____ _____
          Date                    Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:

1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

## IN THE CIRCUIT COURT OF MARYLAND
### FOR PRINCE GEORGE'S COUNTY
#### Civil Division

| | |
|---|---|
| MAKIA STAVES<br>9510 Silver Fox Turn<br>Clinton, MD 20735<br><br>LINDA HENSON-HUBB<br>11006 Rhodenda Place<br>Upper Marlboro, MD 20772<br><br>DEMARIO NEWMAN<br>10814 Flying Change Ct<br>Upper Marlboro, MD 20772<br><br>JULIUS PINKNEY<br>604 Pasture Pl,<br>Prince Frederick, MD 20678<br><br>TONYA MANAGO<br>9054 Trumps Hill Road<br>Upper Marlboro, MD 20772<br><br>AYANA BALL WARD<br>1105 Kings Tree dr.<br>Mithchellville, MD 20721<br><br>CARLYLE ROSE<br>8302 Triple Crown Rd<br>Bowie, MD 20715<br><br>      Plaintiffs,<br><br>v.<br><br>PRINCE GEORGE'S COUNTY<br>BOARD OF EDUCATION<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County<br><br>**SERVE ON:**<br><br>BRANNDON D. JACKSON, Chair | Case No.: _____ |

| | |
|---|---|
| Prince George's County Board of Education<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>PRINCE GEORGE'S COUNTY<br>PUBLIC SCHOOLS<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County<br><br>**SERVE ON:**<br><br>MILLARD HOUSE II<br>Chief Executive Officer<br>Prince George's County Public Schools<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>    Defendants. | |

## COMPLAINT
## WAGE THEFT

Makia Staves, Linda Henson-Hubb, Demario Newman, Julius Pinkney, Tonya Manago, Ayana Ball-Ward, and Carlyle Rose ("Plaintiffs"), through their attorneys, bring this lawsuit against the Defendants, Prince George's County Board of Education and the Prince George's County Public Schools for unpaid wages under the Maryland Wage Payment & Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL") and the common law, stating as follows:

## NATURE OF THE CASE

1.      Plaintiffs, Certified Athletic Directors for the Prince Georges County Public Schools who, because of a PGCPS teacher shortage during the 2022 – 2023 school year, worked as classroom teachers in addition to their full time jobs as Athletic Directors. Beginning in

2

August of 2022, Plaintiffs were informed several times, orally and in writing, that they would be paid their regular rate of pay for their duties as 'Teacher of Record' in the classroom. Abruptly, in March of 2023, months after Plaintiffs had already started working as Teachers of Record to assist their school district, Defendant House issued a letter to the Plaintiffs informing them that they would only receive substitute teacher pay for their extra duties, roughly half their actual pay.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this case because Plaintiff seeks more than $30,000 in damages.

3.      This Court has personal jurisdiction over the Defendants pursuant to Md. Code, Cts. And Jud. Proc. §§ 1-501, 6-102 because Defendants' principal place of business is located in Prince George's County, Maryland.

4.      Venue is proper pursuant to Md. Code, Cts. And Jud. Proc. §6-201 because Defendants' principal place of business is located in Prince George's County, Maryland.

## PARTIES

5.      Plaintiff Staves is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

6.      Plaintiff Henson-Hubb is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County

government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

7.      Plaintiff Newman is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

8.      Plaintiff Pinkney is a resident of Calvert County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

9.      Plaintiff Manago is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Business Educator, Athletic Coach and/or Teacher of Record.

10.     Plaintiff Ball-Ward is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

11.     Plaintiff Rose is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

4

12.    Plaintiffs, at all relevant times, were Defendants' "employees" within the meaning of Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL").

13.    Defendant PGCPS is a public-school district in the State of Maryland, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

14.    Defendant Prince George's County Board of Education is the official policymaking and oversight body for Defendant PGCPS, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

15.    Defendant House is and was the Chief Executive Officer for Prince George's County Public Schools at all times relevant to the complaint. His offices are located at 14201 School Lane, Upper Marlboro, MD 20772.

16.    Defendant Alsobrooks, County Executive for Prince Georges County, together with the Prince George's County Council collectively constitute the government of Prince George's County, Maryland. At all times relevant to the complaint, the Prince George's County Government was Plaintiff's employer.

17.    All Defendants are "employer[s]" within the meaning of Md. Code Ann., Lab. & Empl. §§ 3-501 et seq.

## FACTS

18.    Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as fully set forth herein.

19.    Prior to July 1, 2022, PGCPS athletic directors served as athletic directors 50% of the time and served as classroom teachers 50% of the time. Athletic directors were paid an additional 10% of their salary to act in this dual role.

5

20. Effective July 1, 2022, PGCPS changed the athletic director position to full time, 10-month positions. This modification removed the requirement that athletic directors teach classes and also removed the additional 10% compensation since they would no longer serve as classroom teachers of record.

21. In August of 2022, Dr. Carletta Marrow, PGCPS Associate Superintendent held a meeting with PGCPS athletic directors the via Zoom, which the Plaintiffs attended. Shirly Diggs, the PGCPS Coordinating Supervisor of Interscholastic Athletics and George McClure, PGCPS Supervisor of Interscholastic Athletics were also in attendance at the meeting.

22. During the August, 2022, Zoom meeting, Dr. Marrow stated, unequivocally, that athletic directors who "fill in" or "sub" for an absent teacher would be paid the substitute teacher rate of approximately $30/hour.

23. On the other hand, athletic directors who are assigned classes as "Teachers of Record" would be paid their Per Diem rate for the additional time spent in the classroom above and beyond their full-time athletic director duties.

24. Upon the start of the school year, each of the Plaintiffs were assigned as classroom teachers of record, requiring them to teach classes during the day in addition to their full-time athletic director duties.

25. The Plaintiffs' supervisors and school principals assigned the Plaintiffs to teach classes because of a shortage of teachers available to teach.

26. The Plaintiffs did not act as substitute teachers when teaching classes during the 2022-2023 school year; on the contrary, the Plaintiffs were the assigned teachers for the classes they taught.

6

27.     As teachers of record, the Plaintiffs were required to complete the following

duties in addition to their duties as full-time athletic directors:

- Attend parent-teacher conferences;
- Attend back-to-school nights;
- Provide a syllabus for the subject(s) they taught;
- Attend department meetings;
- Input Progress Report/Report Card Grades;
- Submit Grade Change Forms when applicable;
- Lesson Planning;
- Attend IEP/504 meetings;
- Overall classroom Management;
- In initiate disciplinary actions (Write-ups/Cut slips etc.);
- Respond to Parent and Staff emails regarding students in classes;
- Grade Assignments and Assessments

28.     Substitute teachers are not required to complete any of these duties since they are

not teachers of record.

29.     The Plaintiffs spent significant time teaching classes during the day and

performing regular administrative duties required of classroom teachers.

30.     This limited the Plaintiffs' ability to fully perform their regular duties as athletic

directors during the workday, requiring the Plaintiffs to work additional hours during the evening

to complete their work.

31.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem

hourly rate for each day they took on these additional teaching duties to help PGCPS.

32.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the

Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were

entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this

assurance to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human

Resources, according to Mr. Burnett's email.

7

33.    Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

34.    However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute rate of $30/hour for the additional duties they had been performing for the prior seven months.

35.    Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

36.    During the 2022-2023 school year, Ms. Staves worked 70 hours with a per diem rate of pay of $70 for total expected wages of $4,900. Ms. Staves also worked 539 hours with a per diem rate of pay of $64.40 for total expected wages of $34,711.60. Ms. Staves has not received wages at all for her work as the teacher of record for the 2022-2023 school year.

37.    During the 2022-2023 school year, Ms. Henson-Hubb worked 478 hours with a per diem rate of pay of $73.67 for total expected wages of $35,166.46. Defendants paid Ms. Henson-Hubb $14,340 in wages, $20,826.46 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

38.    During the 2022-2023 school year, Mr. Pinkney worked 470 hours with a per diem rate of pay of $71.10 for total expected wages of $33,417.00. Defendants paid Mr. Pinkney $18,060 in wages, $15,357.00 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

8

39.     During the 2022-2023 school year, Mr. Rose worked 176 hours with a per diem rate of pay of $71.10 for total expected wages of $12,513.60. Defendants paid Mr. Rose $2,790.00 in wages, $9,723.60 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

40.     During the 2022-2023 school year, Mr. Newman worked 510 hours with a per diem rate of pay of $71.10278 for total expected wages of $36,262.42. Defendants paid Mr. Newman $15,300.00 in wages, $20,962.42 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

41.     During the 2022-2023 school year, Ms. Manago worked 324 hours with a per diem rate of pay of $71.10 for total expected wages of $23,036.40. Defendants paid Ms. Manago $9,720.00 in wages, $13,316.40 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

42.     During the 2022-2023 school year, Ms. Ball-Ward worked 608 hours with a per diem rate of pay of $55.05 for total expected wages of $33,470.40. Defendants paid Ms. Ball-Ward $18,240 in wages, $15,230.40 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

43.     On November 8, 2023, Plaintiffs sent a letter to the CEO of PGCPS informing the Defendants of their failure to pay the Plaintiffs as promised for the work performed as teachers of record above and beyond their full time duties as athletic directors.

44.     The letter to the Defendants included the amount PGCPS promised to pay Plaintiffs, the amount Plaintiffs were paid, and the amount due according to PGCPS' written promises to pay Plaintiffs their per diem rate.

9

45.     On November 20, 2023, Plaintiffs received a letter from the PGCPS Employee and Labor Relations Office indicating that PGCPS denied failing to pay the Plaintiffs' wages, despite having information that Dr. Marrow and other administration officials promised the Plaintiffs that they would be paid their per diem hourly rate for performing work duties above and beyond their full time positions and well beyond that which is expected of a substitute teacher.

### COUNT I
### Violation of the Maryland Wage Payment & Collection Law
### Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL")
### (Against All Defendants)

46.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

47.     During the 2022-2023 school year and at all times thereafter, Defendants have refused to pay the Plaintiffs' promised wages due, in violation of the MWPCL, Md. Code Ann., Labor & Empl. §§ 3-501 et seq.

48.     After repeatedly promising to pay Plaintiffs their wages at their respective per diem rate, Defendants have not paid the Plaintiffs all of their owed wages.

49.     Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-502, Defendants were obligated to pay Plaintiffs for all wages earned on a regular basis, including all minimum wages and overtime wages.

50.     Defendants' actions in failing to pay Plaintiffs all wages owed for all hours worked were willful violations of the MWPCL.

51.     Over two weeks have elapsed from the date on which the Defendants were required to have paid the Plaintiffs all owed wages as required by the MWPCL, Md. Code Ann., Labor & Empl. § 3- 507.2(a).

52.     On November 8, 2023, Plaintiffs sent a detailed letter to the CEO of PGCPS informing the Defendants of their failure to pay the Plaintiffs, including the amounts owed to each of the Plaintiffs.

53.     There is no bona fide dispute as to the wages owed to the Plaintiffs.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) Plaintiffs be awarded treble damages; (c) that Plaintiffs be awarded pre- and post- judgment interest; (d) Plaintiffs be awarded their attorney's fees and costs; and (e) the Court grant such further relief as the nature of this cause shall require.

## COUNT II
## UNJUST ENRICHMENT
### (Against All Defendants)

54.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

55.     Plaintiffs and Defendants entered into an oral contract whereby Plaintiffs agreed to perform additional duties as classroom teachers of record, in addition to their full time duties as athletic directors for PGCPS, and the Defendants agreed to pay the Plaintiffs their "Per Diem" hourly rate for performing those additional duties.

56.     The oral contract entered into by the Plaintiffs and the Defendants was memorialized and reinforced in writing by Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS.

57.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

58.     These duties were in addition to their regular, full-time duties as athletic directors.

11

59.     These additional duties limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

60.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

61.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this written promise to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

62.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

63.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute teacher rate of $30/hour for the additional duties they had been performing for the prior seven months.

64.     Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

65.     Plaintiffs provided valuable benefits to the Defendants when they agreed to take on additional duties as classroom teachers of record at their per diem hourly rate.

12

66.     Defendants were aware of the benefits conferred upon them by the Plaintiffs since the Defendants asked the Plaintiffs to take on additional duties as classroom teachers and promising to pay Plaintiffs their per diem hourly rate for the additional duties they performed.

67.     Defendants accepted the benefits of the bargain they struck when the Plaintiffs performed additional duties as classroom teachers, as agreed.

68.     Defendants failed to pay for the additional duties performed by the Plaintiffs as promised.

69.     Equity, fairness, and the interests of justice require that Defendants pay Plaintiffs as a result of the substantial benefits conferred upon Defendants in the form of Plaintiffs' performance of additional duties above and beyond their full time duties as Athletic Directors.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

## COUNT III
## BREACH OF CONTRACT
### (Against All Defendants)

70.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

71.     Plaintiffs and Defendants entered into an oral contract whereby Plaintiffs agreed to perform additional duties as classroom teachers of record, in addition to their full time duties as athletic directors for PGCPS, and the Defendants agreed to pay the Plaintiffs their "Per Diem" hourly rate for performing those additional duties.

13

72.     The oral contract entered into by the Plaintiffs and the Defendants was memorialized and reinforced in writing by Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS.

73.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

74.     These duties were in addition to their regular, full-time duties as athletic directors.

75.     These additional duties limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

76.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

77.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this written promise to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

78.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

79.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute teacher rate of $30/hour for the additional duties they had been performing for the prior seven months.

14

80.    Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

81.    Plaintiffs provided valuable benefits to the Defendants when they agreed to take on additional duties as classroom teachers of record at their per diem hourly rate.

82.    Defendants were aware of the benefits conferred upon them by the Plaintiffs since the Defendants asked the Plaintiffs to take on additional duties as classroom teachers and promising to pay Plaintiffs their per diem hourly rate for the additional duties they performed.

83.    Defendants accepted the benefits of the bargain they struck when the Plaintiffs performed additional duties as classroom teachers, as agreed.

84.    Defendants failed to pay for the additional duties performed by the Plaintiffs as promised.

85.    WHEREFORE, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

## <u>JURY TRIAL PRAYER</u>

Plaintiff hereby demands a trial by jury on all such eligible claims.

Dated: January 28, 2025                         Respectfully Submitted,

_/s/ Darrell Chambers_
Darrell Chambers [980872]
Douglas S. Rosenbloom [1016235]
CHAMBERS & ROSENBLOOM LLP
4800 Hampden Lane Suite 200
Bethesda, MD 20814
Tel: (301) 500-1575
darrell@chambersrosenbloom.com
doug@chambersrosenbloom.com

_Counsel for Plaintiffs_

16



**CIRCUIT COURT FOR PRINCE GEORGES COUNTY, MARYLAND**
14735 Main Street, Upper Marlboro, Maryland, 20772

**To:** PRINCE GEORGE S COUNTY BOARD OF EDUCATION
SERVE ON: BRANNDON D. JACKSON, CHAIR
SASSCER ADMINISTRATION BUILDING
14201 SCHOOL LANE
UPPER MALBORO, MD 20772

|  |  |
|---|---|
| **Case Number:** | C-16-CV-25-000485 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**MAKIA STAVES, ET AL. VS. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, ET AL.**

Issue Date: 1/31/2025

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

MAKIA STAVES
9510 Silver Fox Turn
Clinton, MD 20735

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin El Amin #845
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Prince George's County**

Makia Staves, et al. vs. PRINCE GEORGE S COUNTY BOARD OF EDUCATION, et al.Case Number: C-16-CV-25-0004

## SHERIFF'S RETURN
### (please print)

To:  PRINCE GEORGE S COUNTY BOARD OF EDUCATION

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                    Name of person served

on _____ at _____
          Date of service                           Location of service

_____ by _____ with the following:
                                      Manner of service

☐ Summons                         ☐ Counter-Complaint
☐ Complaint                      ☐ Domestic Case Information Report
☐ Motions                          ☐ Financial Statement
☐ Petition and Show Cause Order     ☐ Interrogatories
☐ Other _____
                              Please specify

(2) Was unable to serve because:
    ☐ Moved left no forwarding address     ☐ No such address
    ☐ Address not in jurisdiction         ☐ Other
                                            Please specify

Sheriff fee: $ _____ ☐ waived by _____

_____    _____
            Date                 Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**IN THE CIRCUIT COURT OF MARYLAND**
**FOR PRINCE GEORGE'S COUNTY**
**Civil Division**

| | |
|---|---|
| MAKIA STAVES<br>9510 Silver Fox Turn<br>Clinton, MD 20735<br><br>LINDA HENSON-HUBB<br>11006 Rhodenda Place<br>Upper Marlboro, MD 20772<br><br>DEMARIO NEWMAN<br>10814 Flying Change Ct<br>Upper Marlboro, MD 20772<br><br>JULIUS PINKNEY<br>604 Pasture Pl,<br>Prince Frederick, MD 20678<br><br>TONYA MANAGO<br>9054 Trumps Hill Road<br>Upper Marlboro, MD 20772<br><br>AYANA BALL WARD<br>1105 Kings Tree dr.<br>Mithchellville, MD 20721<br><br>CARLYLE ROSE<br>8302 Triple Crown Rd<br>Bowie, MD 20715<br><br>       Plaintiffs,<br><br>v.<br><br>PRINCE GEORGE'S COUNTY<br>BOARD OF EDUCATION<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County<br><br>**SERVE ON:**<br><br>BRANNDON D. JACKSON, Chair | Case No.: _____ |

| | |
|---|---|
| Prince George's County Board of Education<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>PRINCE GEORGE'S COUNTY<br>PUBLIC SCHOOLS<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County<br><br>**SERVE ON:**<br><br>MILLARD HOUSE II<br>Chief Executive Officer<br>Prince George's County Public Schools<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>Defendants. | |

## COMPLAINT
## WAGE THEFT

Makia Staves, Linda Henson-Hubb, Demario Newman, Julius Pinkney, Tonya Manago, Ayana Ball-Ward, and Carlyle Rose ("Plaintiffs"), through their attorneys, bring this lawsuit against the Defendants, Prince George's County Board of Education and the Prince George's County Public Schools for unpaid wages under the Maryland Wage Payment & Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL") and the common law, stating as follows:

## NATURE OF THE CASE

1.      Plaintiffs, Certified Athletic Directors for the Prince Georges County Public Schools who, because of a PGCPS teacher shortage during the 2022 – 2023 school year, worked as classroom teachers in addition to their full time jobs as Athletic Directors. Beginning in

2

August of 2022, Plaintiffs were informed several times, orally and in writing, that they would be paid their regular rate of pay for their duties as 'Teacher of Record' in the classroom. Abruptly, in March of 2023, months after Plaintiffs had already started working as Teachers of Record to assist their school district, Defendant House issued a letter to the Plaintiffs informing them that they would only receive substitute teacher pay for their extra duties, roughly half their actual pay.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this case because Plaintiff seeks more than $30,000 in damages.

3.      This Court has personal jurisdiction over the Defendants pursuant to Md. Code, Cts. And Jud. Proc. §§ 1-501, 6-102 because Defendants' principal place of business is located in Prince George's County, Maryland.

4.      Venue is proper pursuant to Md. Code, Cts. And Jud. Proc. §6-201 because Defendants' principal place of business is located in Prince George's County, Maryland.

## PARTIES

5.      Plaintiff Staves is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

6.      Plaintiff Henson-Hubb is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County

government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

7.      Plaintiff Newman is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

8.      Plaintiff Pinkney is a resident of Calvert County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

9.      Plaintiff Manago is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Business Educator, Athletic Coach and/or Teacher of Record.

10.     Plaintiff Ball-Ward is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

11.     Plaintiff Rose is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, Athletic Coach and/or Teacher of Record.

4

12.     Plaintiffs, at all relevant times, were Defendants' "employees" within the meaning of Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL").

13.     Defendant PGCPS is a public-school district in the State of Maryland, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

14.     Defendant Prince George's County Board of Education is the official policymaking and oversight body for Defendant PGCPS, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

15.     Defendant House is and was the Chief Executive Officer for Prince George's County Public Schools at all times relevant to the complaint. His offices are located at 14201 School Lane, Upper Marlboro, MD 20772.

16.     Defendant Alsobrooks, County Executive for Prince Georges County, together with the Prince George's County Council collectively constitute the government of Prince George's County, Maryland. At all times relevant to the complaint, the Prince George's County Government was Plaintiff's employer.

17.     All Defendants are "employer[s]" within the meaning of Md. Code Ann., Lab. & Empl. §§ 3-501 et seq.

## FACTS

18.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as fully set forth herein.

19.     Prior to July 1, 2022, PGCPS athletic directors served as athletic directors 50% of the time and served as classroom teachers 50% of the time. Athletic directors were paid an additional 10% of their salary to act in this dual role.

5

20.     Effective July 1, 2022, PGCPS changed the athletic director position to full time, 10-month positions. This modification removed the requirement that athletic directors teach classes and also removed the additional 10% compensation since they would no longer serve as classroom teachers of record.

21.     In August of 2022, Dr. Carletta Marrow, PGCPS Associate Superintendent held a meeting with PGCPS athletic directors the via Zoom, which the Plaintiffs attended. Shirly Diggs, the PGCPS Coordinating Supervisor of Interscholastic Athletics and George McClure, PGCPS Supervisor of Interscholastic Athletics were also in attendance at the meeting.

22.     During the August, 2022, Zoom meeting, Dr. Marrow stated, unequivocally, that athletic directors who "fill in" or "sub" for an absent teacher would be paid the substitute teacher rate of approximately $30/hour.

23.     On the other hand, athletic directors who are assigned classes as "Teachers of Record" would be paid their Per Diem rate for the additional time spent in the classroom above and beyond their full-time athletic director duties.

24.     Upon the start of the school year, each of the Plaintiffs were assigned as classroom teachers of record, requiring them to teach classes during the day in addition to their full-time athletic director duties.

25.     The Plaintiffs' supervisors and school principals assigned the Plaintiffs to teach classes because of a shortage of teachers available to teach.

26.     The Plaintiffs did not act as substitute teachers when teaching classes during the 2022-2023 school year; on the contrary, the Plaintiffs were the assigned teachers for the classes they taught.

6

27.     As teachers of record, the Plaintiffs were required to complete the following

duties in addition to their duties as full-time athletic directors:

- Attend parent-teacher conferences;
- Attend back-to-school nights;
- Provide a syllabus for the subject(s) they taught;
- Attend department meetings;
- Input Progress Report/Report Card Grades;
- Submit Grade Change Forms when applicable;
- Lesson Planning;
- Attend IEP/504 meetings;
- Overall classroom Management;
- In initiate disciplinary actions (Write-ups/Cut slips etc.);
- Respond to Parent and Staff emails regarding students in classes;
- Grade Assignments and Assessments

28.     Substitute teachers are not required to complete any of these duties since they are

not teachers of record.

29.     The Plaintiffs spent significant time teaching classes during the day and

performing regular administrative duties required of classroom teachers.

30.     This limited the Plaintiffs' ability to fully perform their regular duties as athletic

directors during the workday, requiring the Plaintiffs to work additional hours during the evening

to complete their work.

31.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem

hourly rate for each day they took on these additional teaching duties to help PGCPS.

32.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the

Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were

entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this

assurance to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human

Resources, according to Mr. Burnett's email.

33.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

34.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute rate of $30/hour for the additional duties they had been performing for the prior seven months.

35.     Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

36.     During the 2022-2023 school year, Ms. Staves worked 70 hours with a per diem rate of pay of $70 for total expected wages of $4,900. Ms. Staves also worked 539 hours with a per diem rate of pay of $64.40 for total expected wages of $34,711.60. Ms. Staves has not received wages at all for her work as the teacher of record for the 2022-2023 school year.

37.     During the 2022-2023 school year, Ms. Henson-Hubb worked 478 hours with a per diem rate of pay of $73.67 for total expected wages of $35,166.46. Defendants paid Ms. Henson-Hubb $14,340 in wages, $20,826.46 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

38.     During the 2022-2023 school year, Mr. Pinkney worked 470 hours with a per diem rate of pay of $71.10 for total expected wages of $33,417.00. Defendants paid Mr. Pinkney $18,060 in wages, $15,357.00 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

8

39.      During the 2022-2023 school year, Mr. Rose worked 176 hours with a per diem rate of pay of $71.10 for total expected wages of $12,513.60. Defendants paid Mr. Rose $2,790.00 in wages, $9,723.60 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

40.      During the 2022-2023 school year, Mr. Newman worked 510 hours with a per diem rate of pay of $71.10278 for total expected wages of $36,262.42. Defendants paid Mr. Newman $15,300.00 in wages, $20,962.42 less than the wages he earned for his work as the teacher of record for the 2022-2023 school year.

41.      During the 2022-2023 school year, Ms. Manago worked 324 hours with a per diem rate of pay of $71.10 for total expected wages of $23,036.40. Defendants paid Ms. Manago $9,720.00 in wages, $13,316.40 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

42.      During the 2022-2023 school year, Ms. Ball-Ward worked 608 hours with a per diem rate of pay of $55.05 for total expected wages of $33,470.40. Defendants paid Ms. Ball-Ward $18,240 in wages, $15,230.40 less than the wages she earned for her work as the teacher of record for the 2022-2023 school year.

43.      On November 8, 2023, Plaintiffs sent a letter to the CEO of PGCPS informing the Defendants of their failure to pay the Plaintiffs as promised for the work performed as teachers of record above and beyond their full time duties as athletic directors.

44.      The letter to the Defendants included the amount PGCPS promised to pay Plaintiffs, the amount Plaintiffs were paid, and the amount due according to PGCPS' written promises to pay Plaintiffs their per diem rate.

9

45.     On November 20, 2023, Plaintiffs received a letter from the PGCPS Employee and Labor Relations Office indicating that PGCPS denied failing to pay the Plaintiffs' wages, despite having information that Dr. Marrow and other administration officials promised the Plaintiffs that they would be paid their per diem hourly rate for performing work duties above and beyond their full time positions and well beyond that which is expected of a substitute teacher.

## COUNT I
### Violation of the Maryland Wage Payment & Collection Law
### Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. ("MWPCL")
### (Against All Defendants)

46.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

47.     During the 2022-2023 school year and at all times thereafter, Defendants have refused to pay the Plaintiffs' promised wages due, in violation of the MWPCL, Md. Code Ann., Labor & Empl. §§ 3-501 et seq.

48.     After repeatedly promising to pay Plaintiffs their wages at their respective per diem rate, Defendants have not paid the Plaintiffs all of their owed wages.

49.     Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-502, Defendants were obligated to pay Plaintiffs for all wages earned on a regular basis, including all minimum wages and overtime wages.

50.     Defendants' actions in failing to pay Plaintiffs all wages owed for all hours worked were willful violations of the MWPCL.

51.     Over two weeks have elapsed from the date on which the Defendants were required to have paid the Plaintiffs all owed wages as required by the MWPCL, Md. Code Ann., Labor & Empl. § 3- 507.2(a).

52.     On November 8, 2023, Plaintiffs sent a detailed letter to the CEO of PGCPS informing the Defendants of their failure to pay the Plaintiffs, including the amounts owed to each of the Plaintiffs.

53.     There is no bona fide dispute as to the wages owed to the Plaintiffs.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) Plaintiffs be awarded treble damages; (c) that Plaintiffs be awarded pre- and post- judgment interest; (d) Plaintiffs be awarded their attorney's fees and costs; and (e) the Court grant such further relief as the nature of this cause shall require.

## COUNT II
## UNJUST ENRICHMENT
### (Against All Defendants)

54.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

55.     Plaintiffs and Defendants entered into an oral contract whereby Plaintiffs agreed to perform additional duties as classroom teachers of record, in addition to their full time duties as athletic directors for PGCPS, and the Defendants agreed to pay the Plaintiffs their "Per Diem" hourly rate for performing those additional duties.

56.     The oral contract entered into by the Plaintiffs and the Defendants was memorialized and reinforced in writing by Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS.

57.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

58.     These duties were in addition to their regular, full-time duties as athletic directors.

11

59.     These additional duties limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

60.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

61.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this written promise to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

62.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

63.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute teacher rate of $30/hour for the additional duties they had been performing for the prior seven months.

64.     Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

65.     Plaintiffs provided valuable benefits to the Defendants when they agreed to take on additional duties as classroom teachers of record at their per diem hourly rate.

12

66.     Defendants were aware of the benefits conferred upon them by the Plaintiffs since the Defendants asked the Plaintiffs to take on additional duties as classroom teachers and promising to pay Plaintiffs their per diem hourly rate for the additional duties they performed.

67.     Defendants accepted the benefits of the bargain they struck when the Plaintiffs performed additional duties as classroom teachers, as agreed.

68.     Defendants failed to pay for the additional duties performed by the Plaintiffs as promised.

69.     Equity, fairness, and the interests of justice require that Defendants pay Plaintiffs as a result of the substantial benefits conferred upon Defendants in the form of Plaintiffs' performance of additional duties above and beyond their full time duties as Athletic Directors.

**WHEREFORE,** Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

## COUNT III
## BREACH OF CONTRACT
### (Against All Defendants)

70.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

71.     Plaintiffs and Defendants entered into an oral contract whereby Plaintiffs agreed to perform additional duties as classroom teachers of record, in addition to their full time duties as athletic directors for PGCPS, and the Defendants agreed to pay the Plaintiffs their "Per Diem" hourly rate for performing those additional duties.

72.     The oral contract entered into by the Plaintiffs and the Defendants was memorialized and reinforced in writing by Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS.

73.     The Plaintiffs spent significant time teaching classes during the day and performing regular administrative duties required of classroom teachers.

74.     These duties were in addition to their regular, full-time duties as athletic directors.

75.     These additional duties limited the Plaintiffs' ability to fully perform their regular duties as athletic directors during the workday, requiring the Plaintiffs to work additional hours during the evening to complete their work.

76.     Dr. Marrow promised the Plaintiffs that they would be paid their regular per-diem hourly rate for each day they took on these additional teaching duties to help PGCPS.

77.     Additionally, on November 28, 2022, Howard Burnett, the Senior Advisor to the Chief Executive Officer and Chief Negotiator for PGCPS stated, in writing, that Plaintiffs were entitled to per diem pay for each hour they serve as teacher of record. Mr. Burnett gave this written promise to Plaintiff Henson-Hubb after discussing the issue with the Chief of PGCPS Human Resources, according to Mr. Burnett's email.

78.     Induced by PGCPS' promises, and since their pay had been reduced by 10% when their positions were converted to full-time athletic director positions, Plaintiffs performed the teaching duties faithfully during the 2022-2023 school year with the understanding that they would be paid according to the agreement with PGCPS.

79.     However, in March of 2023, seven months into the school year, PGCPS issued a memorandum to the Plaintiffs indicating that they would only be paid the substitute teacher rate of $30/hour for the additional duties they had been performing for the prior seven months.

80.     Induced by Dr. Marrow, Plaintiffs took on significant additional duties assigned by their supervisors which are not required of substitute teachers, and they took on these duties relying on the promise that they would be paid their per diem hourly rates.

81.     Plaintiffs provided valuable benefits to the Defendants when they agreed to take on additional duties as classroom teachers of record at their per diem hourly rate.

82.     Defendants were aware of the benefits conferred upon them by the Plaintiffs since the Defendants asked the Plaintiffs to take on additional duties as classroom teachers and promising to pay Plaintiffs their per diem hourly rate for the additional duties they performed.

83.     Defendants accepted the benefits of the bargain they struck when the Plaintiffs performed additional duties as classroom teachers, as agreed.

84.     Defendants failed to pay for the additional duties performed by the Plaintiffs as promised.

85.     WHEREFORE, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

**WHEREFORE**, Plaintiffs request that Defendants (a) be ordered to pay Plaintiffs all owed wages, including minimum wages and overtime wages; (b) that Plaintiffs be awarded pre- and post- judgment interest; (c) Plaintiffs be awarded their attorney's fees and costs; and (d) the Court grant such further relief as the nature of this cause shall require.

## **JURY TRIAL PRAYER**

Plaintiff hereby demands a trial by jury on all such eligible claims.

Dated: January 28, 2025                              Respectfully Submitted,

*/s/ Darrell Chambers*
Darrell Chambers [980872]
Douglas S. Rosenbloom [1016235]
CHAMBERS & ROSENBLOOM LLP
4800 Hampden Lane Suite 200
Bethesda, MD 20814
Tel: (301) 500-1575
darrell@chambersrosenbloom.com
doug@chambersrosenbloom.com

*Counsel for Plaintiffs*

16